**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

GARY PENTON,

      Petitioner,

v.                                     Case No. 8:22-cv-903-CEH-CPT

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____/

**<u>ORDER</u>**

Petitioner, a Florida prisoner, initiated this action by filing a petition for a writ of habeas corpus under 28 U.S.C. § 2254 (Petition) (Doc. 1). Respondent opposes the Petition (Doc. 7). Upon consideration, the Petition will be denied.

## I. BACKGROUND AND RELEVANT PROCEDURAL HISTORY

Petitioner was charged with robbery (Doc. 7-2, Ex. 2).[1] On the day of the robbery, Petitioner gave the victim, an elderly man for whom he had done some yard work, a ride to run some errands, including to a bank to withdraw cash (*Id.*, Ex. 4 at 162-68). Essentially, Petitioner used his cellular phone to call his roommates (co-defendants Michael Gabbard and William Franks) and arrange for them to rob the victim while he was away from the vehicle (*Id.*, Ex. 4 at 168-72, 211-29). While Petitioner left the vehicle to walk to the gas station after his vehicle allegedly ran out

---

[1] For purposes of reference to pleadings and exhibits, the Court will cite the document page numbers assigned by the Court's electronic docketing system.

of gas, a gunman approached the vehicle and threatened the victim to give him his money (*Id.*, Ex. 4 at 170-72).

A jury found Petitioner guilty of robbery (Doc. 7-2, Ex. 5). The trial court sentenced Petitioner to 30 years (*Id.*, Exs. 6, 7). His judgment was amended to show that he was sentenced to a term of 15 years as a prison releasee reoffender and a concurrent term of 30 years as a habitual felony offender (*Id.*, Ex. 10). His conviction and sentence were affirmed on appeal (*Id.*, Ex. 12 at 385).

Petitioner filed a motion for post-conviction relief under Rule 3.850, Fla.R.Crim.P., asserting four claims of ineffective assistance of trial counsel (*Id.*, Ex. 14). The state post-conviction court struck some claims with leave to amend and reserved ruling on the remaining claims (*Id.*, Ex. 15). After Petitioner filed his amendments (*id.*, Ex. 16), the state post-conviction court denied some claims and directed the State to respond to the remaining claims (*Id.*, Ex. 17). After the State responded (*id.*, Ex. 18), the state post-conviction court denied the remaining claims (*Id.*, Ex. 19). The state appellate court reversed the summary denial of two claims and directed the state post-conviction court to conduct an evidentiary hearing on those two claims. *Penton v. State*, 262 So.3d 253, 257-258 (Fla. 2d DCA 2018).

After the evidentiary hearing, the state post-conviction court denied the remaining claims (*Id.*, Exs. 28, 29). The appeal was dismissed as untimely (*Id.*, Ex. 32). Petitioner filed a petition seeking a belated appeal (*id.*, Ex. 37), which was granted (*Id.*, Ex. 39). The state appellate court affirmed the denial of the Rule 3.850 motion

(*Id.*, Ex. 40 at 827).

Petitioner filed his federal habeas petition in this Court (Doc. 1), alleging nine claims for relief.[2]

## II. GOVERNING LEGAL PRINCIPLES

Because Petitioner filed his Petition after April 24, 1996, this case is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Penry v. Johnson*, 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880, 889-90 (11th Cir. 2003). The AEDPA "establishes a more deferential standard of review of state habeas judgments," *Fugate v. Head*, 261 F.3d 1206, 1215 (11th Cir. 2001), to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see also Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (recognizing that the federal habeas court's evaluation of state-court rulings is highly deferential and that state-court decisions must be given the benefit of the doubt).

## A. Standard of Review Under the AEDPA

Under the AEDPA, habeas relief may not be granted regarding a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[2] The Petition includes four grounds for relief. But Ground One consists of six sub-claims.

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

If the federal court concludes that the state court misapplied federal law, habeas relief is appropriate only if that application was "objectively unreasonable." *Id.*

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." However, a determination of a factual issue made by a state court shall be presumed correct, and

4

the habeas Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

B. Exhaustion and Procedural Default

The writ of habeas corpus cannot be granted unless the Petitioner has exhausted all available state court remedies. *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *Lucas v. Sec'y, Dep't of Corr.*, 682 F.3d 1342, 1351 (11th Cir. 2012) (citing 28 U.S.C. § 2254(b), (c)). Exhausting state remedies requires a Petitioner to "fairly present" his claims in each appropriate state court "thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) and *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam)). Moreover, to properly exhaust a claim, "the [Petitioner] must have presented his claims in state court in a procedurally correct manner." *Upshaw v. Singletary*, 70 F.3d 576, 579 (11th Cir. 1995).

Under the procedural default doctrine, a claim raised in a federal habeas Petition is barred from review if the claim was not properly raised in state court and "the court to which the Petitioner would be required to present [the] claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Coleman*, 501 U.S. at 735 n.1. To avoid a procedural default, a Petitioner must show "either cause for and actual prejudice from the default or fundamental miscarriage of justice from applying the default." *Lucas*, 682 F.3d at 1353; *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001).

C. Ineffective Assistance of Counsel

Petitioner alleges ineffective assistance of counsel. Ineffective-assistance-of-counsel claims are analyzed under the test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires showing deficient performance by counsel and resulting prejudice. *Id.* at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

Petitioner must show that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. To demonstrate prejudice, Petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

III. ANALYSIS

GROUND ONE: [Petitioner's] 6th and 14th Amendment rights were violated by ineffective assistance from trial counsel (Doc. 1 at docket pp. 5-7, 16-20)

In Ground One, Petitioner alleges six claims of ineffective assistance of trial counsel.

I. Sub-claim One

Petitioner contends that counsel was ineffective in advising him not to testify. According to Petitioner, counsel misadvised him that if he testified, the jury would learn about the nature of his prior convictions. He asserts that had he testified, he would have "cleared up some issues" and "contradicted" the victim's testimony (Doc. 1 at docket p. 16). He argues that had he and Gabbard testified, he "likely" would have been "exonerated." (*Id.*).

First, as Respondent correctly argues (*see* Doc. 7 at 14-15), Sub-claim One is insufficiently pleaded. Petitioner asserts that his "testimony could have cleared up some issues and would have been contradictory to [the victim's] testimony, giving the jury an alternate version of events." (*Id.*, at docket p. 16). This claim is merely a vague, conclusory statement alleging no facts or reasons in support. Petitioner fails to show adequate prejudice because he does not allege what he would have told the jury at trial and whether that testimony, when weighed against the other evidence before the jury, had a reasonable probability of making a difference in the outcome. The Court cannot grant habeas relief on such a claim. *See Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1060-61 (11th Cir. 2011) ("The allegations [in a habeas petition] must be factual and specific, not conclusory. Conclusory allegations are simply not enough to warrant a hearing . . . . [D]istrict courts [are not] required to mine the record, prospecting for facts that the habeas petitioner overlooked and could have, but did not, bring to the surface in his petition.") (citations omitted).

Even assuming this claim is the same claim presented in Ground One of Petitioner's Rule 3.850 motion (Doc. 7-2, Ex. 14 at 422-34) and his amended Rule 3.850 motion (*Id.*, Ex. 16 at 554-55)–in which he alleged that defense counsel was ineffective in misadvising him not to testify–the claim lacks merit. In denying the claim after an evidentiary hearing, the state post-conviction court stated:

> The Court finds Attorney Watson's testimony to be credible. As Defendant notes in his motion, his written statement to law enforcement states that the co-defendants were "high on meth" on the day of the robbery. (*Ex. D: Motion at pp. 1, 9 and exhibit 4.*) This is consistent with Attorney Watson's testimony that Defendant wanted to testify at trial that the co-defendants were using drugs. In response to this potential testimony, and contrary to Defendant's assertion in his motion, Attorney Watson did not tell Defendant that if Defendant testified, the jury would hear about "every detail" regarding every prior conviction. Instead, Attorney Watson informed Defendant that if Defendant testified as planned regarding his co-defendants' drug use but not his own, he would open the door to the State inquiring about the details of Defendant's prior drug use, including his prior drug-related convictions, for the purpose of impeaching Defendant's testimony regarding his co-defendants. *See, e.g., Mathis v. State*, 135 So. 3d 484, 485 (Fla. 2d DCA 2014); *Cullen v. State*, 920 So. 2d 1155, 1155-56 (Fla. 4th DCA 2006).

> Attorney Watson testified that some of Defendant's proposed testimony would have been helpful in presenting his own defense. Specifically, Attorney Watson anticipated Defendant's written statement being admitted into evidence through law enforcement, which is what occurred. (*Ex. E: Trial Tr. pp. 74-76, 79-80.*) Attorney Watson testified that while he believed the written statement showed Defendant had no prior knowledge of and did not help plan the robbery, the law enforcement officer would testify in a way construing the statement in the opposite light. Attorney Watson acknowledged that Defendant's testimony would have refuted law enforcement's testimony misconstruing the statement and impeached law enforcement's testimony.

> On the other hand, Attorney Watson testified that in western Pasco County, juries already tend (sic) find law enforcement more

credible than defendants and that introducing testimony regarding prior drug convictions would have been potentially ruinous for Defendant's credibility in front of a jury. Additionally, the prior convictions were not the sole basis for Attorney Watson's advice. Attorney Watson was also concerned that Defendant's anticipated testimony that he shared a house and associated with drug users who planned the robbery would result in a jury not believing that Defendant was not involved in the robbery or that the robbery was a surprise to him. Essentially, Attorney Watson was concerned with a guilt-by-association determination by the jury based upon the co-defendants' drug use.

To that end, the Court finds that Attorney Watson was not deficient. He properly and accurately advised Defendant of the benefits and consequences of testifying during trial. The legal advice guiding that recommendation was not deficient.

And even if Attorney Watson's advice regarding the admissibility of prior conviction evidence was incorrect, the Court finds that Defendant was not prejudiced. Attorney Watson's advice went beyond concerns regarding details of Defendant's prior drug convictions. The existence of prior felony convictions, regardless of the details thereof, combined with Defendant's expected testimony that he lived in a house with the drug users that (sic) committed the robbery, also led Attorney Watson to advise Defendant not to testify at trial as Attorney Watson expected that such battle with law enforcement. This was a reasonable strategic decision.

The reasonableness of this strategic decision is shown by the fact that even without Defendant's testimony, Attorney Watson was able to rely on the text of Defendant's written statement to argue that there was no evidence that Defendant participated in or helped plan the robbery. (*Ex. E at 140-41.*) Defendant's Ground One is **denied**.

(Doc. 7-2, Ex. 29 at 709-10) (emphasis in original) (footnote omitted). The state

appellate court affirmed the denial of the Rule 3.850 motion without a written opinion

(*Id.*, Ex. 40 at 827).

The state post-conviction court's denial of this claim was reasonable. Petitioner first asserted that trial counsel incorrectly informed him that, if he chose to testify at trial, the nature of his prior criminal convictions would be revealed to the jury. The state post-conviction court credited counsel's testimony about his discussions with Petitioner concerning the right to testify. Specifically, trial counsel testified that he told Petitioner that his proposed testimony about his co-defendants' drug use was "going to open the door" to the nature of his prior convictions involving drugs (*Id.*, Ex. 28 at 688-89, 694-96). "Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review." *Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011). Petitioner has not shown by "clear and convincing evidence" that the state court's credibility determination was erroneous. 28 U.S.C. § 2254(e)(1).

The state post-conviction court also concluded that defense counsel correctly advised Petitioner about his right to testify. This Court "must defer to the state's construction of its own law when the validity of the [ineffective-assistance] claim . . . turns on state law." *Pinkney v. Sec'y, DOC*, 876 F.3d 1290, 1295 (11th Cir. 2017). Here, the accuracy of defense counsel's advice is a matter of Florida law about impeachment with prior criminal convictions. Because the ineffective-assistance claim turns on an issue of state law, this Court is bound by the state court's construction of its own laws. *See Herring v. Sec'y. Dep't of Corr.*, 397 F.3d 1338, 1354-55 (11th Cir. 2005) ("The Florida Supreme Court already has told us how the issues

would have been resolved under state law had [counsel] done what [the appellant] argues he should have done . . . . It is a fundamental principle that state courts are the final arbiters of state law, and federal courts should not second-guess them on such matters.").

Petitioner also alleged that counsel's advice prevented him from testifying. A defendant's right to testify at a criminal trial is a fundamental and personal right that defense counsel cannot waive. *See United States v. Teague*, 953 F.2d 1525, 1532 (11th Cir. 1992) (en banc), *cert. denied*, 506 U.S. 842 (1992). In *Teague*, the Eleventh Circuit held that it is defense counsel's responsibility to advise the defendant of this right and the strategic implications and "that the appropriate vehicle for claims that the defendant's right to testify was violated by defense counsel is a claim of ineffective assistance [under *Strickland*]." *Id*. at 1534. *Teague* reasoned that an attorney's performance would be deficient under the first prong of the *Strickland* test if counsel refused to accept the defendant's decision to testify and would not call him to the stand or if defense counsel never informed the defendant of the right to testify and that the ultimate decision belonged to the defendant. *Id*. In *Teague*, the defendant's ineffective assistance of counsel claim was rejected because the trial court found that counsel had advised the defendant of his right to testify and that he should not exercise that right, and the defendant did not protest. *Teague*, 953 F.2d at 1535.

During the state post-conviction evidentiary hearing, counsel testified that he discussed with Petitioner "the pros and cons" of Petitioner testifying, advised

Petitioner that he did not believe that "the advantages" of Petitioner testifying "outweighed the disadvantages," and "made it clear that it was [Petitioner's] decision" whether to testify (*Id.*, Ex. 28 at 686-87). And it is apparent from the state trial court's colloquy with Petitioner about his right to testify that Petitioner knew about his right to testify, that he and his attorney discussed it, that it was his decision not to testify, no one forced him not to testify, and he made no protest of counsel's advice not to testify (*Id.*, Ex. 4 at 237-39). Thus, counsel's performance was not constitutionally deficient.

Moreover, the state post-conviction court found that counsel made a reasonable tactical decision when advising Petitioner not to testify. "A decision regarding trial tactics cannot be the basis for a claim of ineffective assistance of counsel unless counsel's tactics are shown to be 'so ill chosen that it permeates the entire trial with obvious unfairness.'" *Teague v. Scott*, 60 F.3d 1167, 1172 (5th Cir. 1995). "Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

Petitioner contended that counsel's advice not to testify was unreasonable. He asserted that his testimony would have shown that he was a friend to the victim, he knew nothing of the robbery before it happened, parts of Detective Koenig's reports were inaccurate, and he knew it was wrong not to have reported that his roommates

12

told him that they had robbed the victim (*Id.*, Ex. 14 at 429-33). But counsel testified that although Petitioner "could have presented a defense to the jury," and "it was a difficult decision" to make, he "ultimately . . . . advised Mr. Penton that [he] didn't think the advantages [of testifying] outweighed the disadvantages[.]" (*Id.*, Ex. 28 at 687-88). Counsel was concerned that if Petitioner testified, the jury would learn not only that Petitioner had multiple felony convictions but also that he was living with the co-defendants in a home with "rampant drug use." (*Id.*, Ex. 28 at 695). Based on his experience, a Pasco County jury would not have believed Petitioner's testimony over the testimony of a law enforcement officer once the jury heard about Petitioner's priors and the drug use in his home (*Id.*, Ex. 28 at 696). And even without Petitioner's testimony, counsel was able to argue from the evidence that Petitioner was a friend of the victim's and could make more money than the amount stolen by working for the victim, and that Petitioner's written statements did not show he participated in or helped plan the robbery (*Id.*, Ex. 4 at 196, 279, 280, 282-84, 288-89).

Counsel's informed decisions on matters of trial strategy, including advising Petitioner against testifying, are entitled to deference. *See Strickland*, 466 U.S. at 690 ("[A] court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."). Even if a different trial attorney would have made different decisions, considering the record, the Court cannot conclude that counsel's

13

performance "fell below an objective standard of reasonableness." *Id*. at 688, 690. *See also, Lisbon v. United States*, 758 F. App'x 780, 783-84 (11th Cir. 2018) (per curiam) (finding counsel's advice to defendant not to testify because he would be impeached with prior conviction could be considered sound strategy even though at trial the court did not allow the prior conviction into evidence).

The state court's decision to deny Petitioner's ineffective assistance of counsel claim is neither contrary to nor an unreasonable application of *Strickland*. Also, the state court's decision did not rely on an unreasonable determination of the facts considering the evidence presented in the state court proceeding. Accordingly, Ground One, Sub-claim One, warrants no relief.

II. Sub-claim Two

Petitioner contends that counsel was ineffective in failing to investigate and call Gabbard to testify. He alleges that Gabbard would have testified that Franks committed the robbery, but neither Gabbard nor the Petitioner was involved.

In state court, Petitioner raised a similar claim in Ground Three of his Rule 3.850 motion (Doc. 7-2, Ex. 14 at 441-43). There, he asserted that counsel was ineffective in failing to investigate and call his co-defendants, "Mike" and "Billy" (Gabbard and Franks). He alleged that they would have testified that *they* committed the robbery, and Petitioner neither participated in it nor had any knowledge of it until the evening following the robbery (*Id*.). After an evidentiary hearing (*id*., Ex. 28), the

state post-conviction court denied the claim:[3]

> As noted above, the Court finds Attorney Watson's testimony to be credible. Contrary to Defendant's assertion, Attorney Watson testified that upon Defendant's request, Attorney Watson attempted to contact the co-defendants for the purpose of having them deposed and testify at trial. However, one co-defendant's attorney laughed at the suggestion that his client would implicate himself in an armed robbery and refused to permit his client to speak with Attorney Watson, much less testify. The other co-defendant was on the run during this case and therefore was unable to testify. Trial counsel cannot be deemed deficient for failing to call unavailable witnesses. *Simmons v. State*, 105 So. 3d 475, 494-95 (Fla. 2012). Therefore, Defendant's Ground Three is **denied**.

(*Id.*, Ex. 29 at 711) (emphasis in original). The state appellate court affirmed the denial of the Rule 3.850 motion without a written opinion (*Id.*, Ex. 40 at 827).

The state post-conviction court's denial of this claim was reasonable. Counsel testified during the evidentiary hearing that he tried to talk to both co-defendants, but one was "on the run" and could not be located, and the other's attorney refused to allow counsel to speak to him (*Id.*, Ex. 28 at 689-91, 693). "Counsel cannot be said to be ineffective for failing to call an unavailable witness." *Williamson v. Moore*, 221 F.3d 1177, 1181 (11th Cir. 2000). And even if Gabbard were available to testify, Petitioner shows no prejudice because he provides no affidavit or actual testimony from Gabbard that reveals what his testimony would have been. *See McKiver v. Sec'y, Fla. Dep't of Corr.*, 991 F.3d 1357, 1365 (11th Cir. 2021) ("a petitioner's own assertions about whether

---

[3] The state post-conviction court initially summarily denied the claim (Doc. 7-2, Ex. 19 at 589-90). But the state appellate court reversed and remanded for an evidentiary hearing (*Id.*, Ex. 22 at 633).

and how a witness would have testified are usually not enough to establish prejudice" (collecting cases)); *Sullivan v. DeLoach*, 459 F.3d 1097, 1109 (11th Cir. 2006) (noting that where a petitioner alleges ineffective assistance of counsel for failure to call a witness, the "prejudice burden is heavy . . . because often allegations of what a witness would have testified to are largely speculative.") (quotation marks and citation omitted); *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) ("Evidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or an affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim.").

The state court's decision to deny Petitioner's ineffective assistance of counsel claim is neither contrary to nor an unreasonable application of *Strickland*. Also, the state court's decision did not rely on an unreasonable determination of the facts considering the evidence presented in the state court proceeding. Accordingly, Ground One, Sub-claim Two, warrants no relief.

III. Sub-claim Three

In Florida, sudden snatching and theft are permissive lesser-included offenses of robbery. *See* Fla. Std. Jury Instr. (Crim.) 15.1. The jury was instructed on robbery and those lesser included offenses (Doc. 7-2, Ex. 4 at 249-55). During closing statements, defense counsel argued that "[t]he lesser included offenses don't really apply not based on what we have heard." (*Id.*, Ex. 4 at 284).

16

Petitioner contends that counsel was ineffective in telling the jury that no lesser included offenses applied to him. He claims this prejudiced him because it deprived the jury of the opportunity to exercise its pardon power and find him guilty of a lesser offense (Doc. 1 at docket pp. 6, 16-17).

Petitioner raised this claim in Ground Two of his Rule 3.850 motion (Doc. 7-2, Ex. 14 at 435-40) and amended Rule 3.850 motion (*Id.*, Ex. 16 at 555-56). In denying the claim, the state post-conviction court stated:

> In Ground Two (A) of his motion, Defendant claims that trial counsel was ineffective for advising the jury that the lesser-included offenses of robbery by sudden snatching and petit theft did not apply to Defendant's case, despite having agreed to their inclusion on the verdict form. Defendant claims that he was prejudiced because there was some "evidence of mitigation" and, absent trial counsel's statements to the jury, there would have been a possibility that the jury would have issued a "mitigating verdict" for a lesser offense. The Court found this claim facially sufficient.

> The State responds that the trial court would have been required to include robbery by sudden snatching and petit theft as lesser-included instructions upon the State's request. Trial counsel, therefore, was merely accepting the inevitable by not objecting to their inclusion. The State further contends that trial counsel properly argued that the lesser-included instructions did not apply based upon the theory of defense that Defendant had no hand in the planning or execution of the robbery, only that he gave too much information to the wrong people who then acted on that information. The State finally contends that it would have been illogical for trial counsel to argue that Defendant had no knowledge or participation in the crime at all but then suggest that the jury convict Defendant of a lesser crime that involved the same level of participation.

> The Court finds that Defendant was not prejudiced in light of the evidence adduced at trial. An element of robbery is that in the course of the taking of money or property, there is the use of force, violence, assault, or putting in fear. § 812.13(1), Fla. Stat. (2012). This is not an

element found in either robbery by sudden snatching or petit theft. §§ 812.131(1); 812.014(1), Fla. Stat. (2012). The victim offered unrefuted testimony that the robber pointed the gun to the victim's head and said "give me your money, you MF or I will kill you." The victim further testified that he was put in fear by the robber's actions. (Ex. E at 31-36.) Therefore, even if trial counsel had refrained from arguing to the jury that robbery by sudden snatching and petit theft did not apply, there is not a reasonable probability that the jury would have found Defendant guilty of petit theft or robbery by sudden snatching instead of robbery. Ground Two (A) is denied.

(*Id.*, Ex. 19 at 588-89). The state appellate court affirmed the denial of the Rule 3.850 motion without a written opinion (*Id.*, Ex. 40 at 827).

The state court's denial of this claim on *Strickland*'s prejudice prong was reasonable. Florida law requires a jury to "render a true verdict according to the law and the evidence." *Sanders v. State*, 946 So. 2d 953, 958 (Fla. 2006). Thus, a jury may convict of a lesser-included offense "only if it decide[s] that the main accusation has not been proved beyond a reasonable doubt." *Id.* Indeed, the jury here was instructed that if it "return[ed] a verdict of guilty, it should be for the highest offense which has been proven beyond a reasonable doubt." (Doc. 7-2, Ex. 4 at 265). The Court must assume that the jury followed this instruction. *See Strickland*, 466 U.S. at 694 ("[A] court should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge or jury acted according to law."). The jury found Petitioner guilty of robbery (*Id.*, Ex. 5). Accordingly, even if counsel had argued that the lesser included offenses applied, "the jury would not have been permitted to convict [Petitioner] of the lesser-included offense[s] because it had concluded that the

evidence established that he was guilty of the greater offense []" of robbery. *Crapser v. Sec'y, Dep't of Corr.*, 855 F. App'x 626, 628 (11th Cir. 2021).

At bottom, Petitioner's "assertion of prejudice depends...on the possibility of a jury pardon—that is, that the jury would have disregarded its oath and violated its instructions by acquitting him of the greater offense and convicting him of a lesser one even though the evidence supported both crimes." *Id.* "The possibility of a jury pardon, however, cannot establish prejudice under *Strickland*." *Thornton v. Sec'y, Fla. Dep't of Corr.*, 2021 WL 2073685, at *9 (M.D. Fla. May 24, 2021); *see also Santiago v. Sec'y, Fla. Dep't of Corr.*, 472 F. App'x 888, 889 (11th Cir. 2012) ("The jury in [Petitioner's] trial concluded that the evidence against him supported his conviction for the greater offenses on which it was instructed; therefore, even if the lesser-offense instructions had been given, the jury would not have been permitted to convict [Petitioner] of the lesser included offenses because it had concluded that the evidence established that he was guilty of the greater offenses.").

The state court's decision to deny Petitioner's ineffective assistance of counsel claim for lack of prejudice is neither contrary to nor an unreasonable application of *Strickland*. Also, the state court's decision did not rely on an unreasonable determination of the facts considering the evidence presented in the state court proceeding. Accordingly, Ground One, Sub-claim Three warrants no relief.

IV. Sub-claim Four

Petitioner contends that counsel was ineffective in failing to move to suppress

19

statements he gave to law enforcement. He argues the statements would have been suppressed because they were made before he was read his *Miranda* rights.

First, as Respondent argues (*see* Doc.7 at 28), Sub-claim Four is insufficiently pleaded. Petitioner gave statements to law enforcement on January 19, 2013, February 27, 2013, and April 26, 2013 (*See* Doc. 7-2, Ex. 4 at 191-95, 209-15, 215-29). He fails to specify which statement or statements counsel should have moved to suppress. He also fails to allege facts showing any of the three statements would have been inadmissible had counsel moved to suppress. This claim is no more than a vague, conclusory statement alleging no facts or reasons in support. The Court cannot grant habeas relief on such a claim. *See Chavez*, 647 F.3d at 1060-61.

Even assuming this claim is the same claim presented in Ground Four of his Rule 3.850 motion (Doc. 7-2, Ex. 14 at 444-56) and his amended Rule 3.850 motion (*Id.*, Ex. 16 at 557-58)–in which he alleged that defense counsel was ineffective for failing to move to suppress the February 27, 2013 statement based on the failure of law enforcement to read him his *Miranda* rights–the claim lacks merit. In denying the claim, the state post-conviction court stated:

> Defendant alleges that counsel was ineffective for failing to move to suppress verbal and written statements that he made to Detective Koenig on February 27, 2013 because they were obtained in violation of Miranda v. Arizona, 384 U.S. 436 (1966). He alleges that Detective Koenig "improperly induced him to make statements upon a promise to approach the State Attorney to help him" and told Defendant he was to be arrested "right there." Defendant contends that he was considered in custody and was under interrogation when he made the statements, such that Miranda warnings were necessary, because he felt that he was not

free to leave and that he would be arrested on the spot. Defendant asserts his February statement was more inculpatory than any other evidence presented by the State and therefore its suppression would have affected the jury's deliberations sufficient to undermine the outcome of the proceedings.

Defendant's claim is refuted by the record. Contrary to Defendant's assertion, Detective Koenig provided uncontested testimony that during the February interview, he neither threatened Defendant nor promised him anything. (Exhibit C: Trial Transcript p. 78.) Further, the detective testified that the interview was conducted in Defendant's front yard and Defendant was not under arrest. (Ex. C: Tr. 71.) Once the interview was concluded, the detective left. (Ex. C at 81.) Defendant was not under custodial interrogation and so a motion to suppress his February statements would have been denied. *See State v. Wilson*, 747 So. 2d 1051, 1052-53 (Fla. 5th DCA 2000) (defendant not in custody where deputy went to defendant's home, defendant remained in the doorway, deputy remained in the yard, and deputy left when the interview was over; therefore <u>Miranda</u> warnings not required). Trial counsel cannot be deemed deficient for failing to file a motion to suppress that could not properly be granted. <u>Gettel v. State</u>, 449 So. 2d 413, 414 (Fla. 2d DCA 1984).

While Defendant asserts Detective Koenig was lying and Defendant would have provided testimony to support this claim had he testified, the issue of whether trial counsel was ineffective for advising Defendant not to testify is addressed under Ground One. For the purpose of ruling on Ground Four, claims that are "conclusively refuted *by the record*" are denied. <u>Velazquez v. State</u>, 161 So. 3d 526, 527 (Fla. 5th DCA 2014) (emphasis added). Fla. R. Crim. P. 3.850(f)(5). Detective Koenig's uncontested testimony on the record that he neither threatened Defendant nor promised him anything directly refutes Defendant's allegation that the detective told Defendant he would be arrested if he didn't make a statement and that if he made a statement, the detective promised to approach the state attorney to help Defendant.

However, even if trial counsel's performance was deficient, Defendant was not prejudiced by the admission of his February statements. Defendant's April 26, 2013 verbal and written statements, made after Defendant waived his <u>Miranda</u> rights, were more inculpatory and damaging to Defendant's case than his February statements. Like his

21

February statements, Defendant's April statements were inconsistent
with his statement to Detective Carpenter on the day of the crime that
he did not know who had robbed the victim. (Ex. C at 54.) But where
Defendant did not admit he knew of the robbery beforehand in his
February statements (Ex. C at 74), his April statements established that
his codefendants informed Defendant of the robbery prior to its
occurrence. (Ex. C at 89.) Because Defendant's April statements were
more damaging to Defendant's case than his February statements, even
if the February statements had been suppressed, there is little probability
that the outcome of the trial would have been affected and therefore the
Court's confidence in the outcome of the trial is not undermined.
Defendant's Ground Four is denied.

(*Id.*, Ex. 17 at 568-69). The state appellate court affirmed the denial of the Rule 3.850

motion without a written opinion (*Id.*, Ex. 40 at 827).

The denial of this claim was reasonable. The state post-conviction court found

that Petitioner was not in custody when he gave his February 27, 2013 statement to

Detective Koenig. The finding is supported by Detective Koenig's uncontested trial

testimony that he spoke with Petitioner in Petitioner's front yard, Petitioner was not

under arrest at the time, he never threatened Petitioner or promised him anything to

get him to give a statement, and he left after conducting the interview (*Id.*, Ex. 4 at

210, 217, 220).

*Miranda* warnings are required only "where a suspect *in custody* is subjected to

interrogation." *Rhode Island v. Innis*, 446 U.S. 291, 300 (1980) (emphasis added).

Detective Koenig's testimony establishes that, under the totality of the circumstances,

Petitioner was not in custody when he gave his statement on February 27, 2013. *See,*

*e.g.*, *United States v. Brown*, 441 F.3d 1330, 1347 (11th Cir. 2006) ("A defendant is in

22

custody for the purposes of *Miranda* when there has been a 'formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.'" (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983))); *United States v. Newton*, 369 F.3d 659, 675 (2d Cir. 2004) ("absent an arrest, interrogation in the familiar surroundings of one's own home is generally not deemed custodial"); *United States v. Young*, 2017 WL 653556, at *4-5 (N.D. Ga. Jan. 25, 2017), *report and recommendation adopted*, 2017 WL 635120 (N.D. Ga. Feb. 16, 2017) (citations omitted) (concluding that the defendant was not subject to a custodial interrogation where he was interviewed outside his home, told he was not under arrest and that he did not need to speak with the agents, he was not handcuffed or restrained in any way, the agents spoke in a calm tone of voice and made no promises or threats, the agents' weapons were holstered throughout the interview, the interview was brief, and after the interview, the defendant was led back to his family and was not arrested until eight months later). Thus, any motion to suppress Petitioner's statement during the non-custodial interview would have been denied. Counsel could not have rendered deficient performance in failing to make a motion to suppress with no merit.

Even if counsel were deficient, Petitioner cannot show prejudice. Admission of Petitioner's February 27, 2013 statement did not affect the outcome of his trial. A petitioner is entitled to federal habeas corpus relief only if the constitutional error from his trial had a substantial and injurious effect or influence in determining the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quotation omitted). "To show

prejudice under *Brecht*, there must be 'more than a reasonable possibility that the error contributed to the [conviction or] sentence.'" *Mason v. Allen*, 605 F.3d 1114 (11th Cir. 2010) (quoting *Horsley v. State of Ala.*, 45 F.3d 1486, 1493 (11th Cir. 1995)). The harmless error rule applies to evidence admitted in violation of *Miranda*. *United States v. Street*, 472 F.3d 1298, 1314–15 (11th Cir. 2006).

On April 26, 2013, after Petitioner was read and waived his *Miranda* rights, Petitioner gave Detective Koenig both a verbal and a written statement (Doc. 7-2, Ex. 4 at 215-29). Those statements were more incriminating than his February statements because they established that his co-offenders informed him that they intended to rob the victim before the robbery occurred (*Id.*, Ex. 4 at 228). Because Petitioner's April statements were more damaging to his case than his February statements, any error in admitting the February statements was harmless. *See Street*, 472 F.3d at 1315 ("Because the improperly admitted statements were encompassed within the more detailed, properly admitted confession, the error was harmless.") (citation omitted). *See also*, *United States v. Daniel*, 932 F.2d 517, 521–22 (6th Cir. 1991) (where defendant's second, admissible statement "supplied greater information" than the first, inadmissible one, the first confession was "cumulative and unnecessary to establishing the case against the defendant" so that its admission "was harmless error"). The Court cannot say that even if it were error to admit Petitioner's February statements at trial, that there was "more than a reasonable possibility that the error contributed to the [conviction]." *Horsley*, 45 F.3d at 1493.

In sum, "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003) (dictum). Based on the record before the state court, this Court concludes that the state post-conviction court's determination that Petitioner was not in custody when he gave his February statements is not objectively unreasonable. Given the totality of the circumstances, Petitioner has not carried his burden to show that he was in custody when he gave those statements. Moreover, Petitioner has failed to show that any constitutional error contributed to his conviction. Thus, the denial of this ineffective assistance claim did not result in a decision that was contrary to, or involved an unreasonable application of, *Strickland*, nor result in a decision that was based on an unreasonable determination of the facts considering the evidence presented in the state court proceeding. Ground One, Sub-claim Four warrants no relief.

V. Sub-claim Five

Petitioner contends that counsel was ineffective in failing to move to disqualify the trial judge during sentencing. He argues that the judge's statement that "I find [Petitioner] more culpable [than the co-defendant who robbed the victim] because [Petitioner] violated the trust that the victim had with him []" (Doc. 7-2, Ex. 6 at 784) revealed the judge's bias against him.

Respondent correctly argues that this claim is unexhausted because Petitioner

never raised it in state court (Doc. 7 at 33-34). "If the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith*, 256 F.3d at 1138. To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). To show prejudice, a petitioner must show not only that an error at the trial created the possibility of prejudice, but that the error worked to his actual and substantial disadvantage and infected the entire trial with "error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). In other words, a petitioner must show at least a reasonable probability of a different outcome. *Henderson*, 353 F.3d at 892.

Absent a showing of cause and prejudice, a petitioner may obtain federal habeas review of a procedurally defaulted claim only if review is necessary to correct a "fundamental miscarriage of justice." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Murray v. Carrier*, 477 U.S. 478, 495–96 (1986). A fundamental miscarriage of justice occurs if a constitutional violation has probably resulted in the conviction of someone who is "actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001). To meet the "fundamental miscarriage of justice" exception, a petitioner must show constitutional error coupled with "new reliable evidence—whether ... exculpatory scientific evidence, trustworthy eyewitness

26

accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513
U.S. at 324.

*Martinez v. Ryan*, 566 U.S. 1 (2012), recognizes a narrow exception to the
exhaustion requirement announced in *Coleman*, 501 U.S. 722, for a claim of ineffective
assistance of trial counsel. *Martinez* holds that, "[w]here, under state law, claims of
ineffective assistance of trial counsel must be raised in an initial review collateral
proceeding, a procedural default will not bar a federal habeas court from hearing a
substantial claim of ineffective assistance at trial if, in the initial review collateral
proceeding, there was no counsel or counsel in that proceeding was ineffective." 566
U.S. at 17. A claim that lacks merit or is wholly without factual support is not
"substantial." *Id*. at 15–16.

Petitioner's claim of ineffective assistance/judicial bias is not substantial.
Petitioner confuses sentencing rationale with bias. The judge's statement to which
Petitioner refers was designed to explain the reason behind the Court's sentence of 30
years. It was appropriate for the trial court to explain the sentence to allow for
meaningful appellate review and to promote the perception of fair sentencing. *Cf.*
*United States v. Johnson*, 877 F.3d 993, 997 (11th Cir. 2017) ("A court must explain its
sentencing decisions adequately enough to allow for meaningful appellate review."
(citing *Gall v. United States*, 552 U.S. 38, 50 (2007))). Thus, as the trial court was merely
explaining the reasons for the sentence imposed and was not displaying bias, counsel
had no reason to move to disqualify the judge. Petitioner also fails to show that a

different judge would have imposed a shorter sentence.

Petitioner fails to show either deficient performance or prejudice. He therefore does not overcome the procedural default under *Martinez* because he fails to show that his defaulted ineffective assistance of trial counsel claim is substantial. Petitioner cannot meet the "fundamental miscarriage of justice" exception to overcome the default because he presents no "new reliable evidence" that he is actually innocent. *Schlup*, 513 U.S. at 327. Because Petitioner satisfies neither exception to procedural default, Ground One, Sub-claim Five is procedurally barred from federal review.

## IV. Sub-claim Six

Petitioner contends that counsel was ineffective in failing to adequately cross-examine the victim, Mr. Flagg. Specifically, Petitioner asserts that when Petitioner was identified as the "Defendant" by the attorneys, the victim appeared to implicate him in the crime by testifying that he was afraid of Defendant, Defendant never gave him a ride before the time of the robbery, and Defendant pointed a gun at him. But when Petitioner was identified as "Mr. Penton," the victim appeared to "exonerate" Petitioner by testifying that he did not believe Petitioner participated in the robbery, Petitioner gave him a ride home after the robbery, and Petitioner approached the police and gave them a statement. Petitioner appears to argue that defense counsel should have cross-examined the victim to show that the victim thought "Defendant" meant Petitioner's co-defendants rather than Petitioner. Petitioner speculates that this was confusing to the jury because they were unaware of Petitioner's co-defendants and

28

thought "Defendant" referred to Petitioner.

Respondent correctly argues that this claim is unexhausted because Petitioner never raised it in state court (Doc. 7 at 36-38). And Petitioner does not overcome the procedural default under *Martinez* because he fails to show that his defaulted ineffective assistance of trial counsel claim is substantial.

It is apparent from the trial transcript that the victim understood that the "Defendant" was Petitioner. For example, he understood that the "Defendant" was the man who had previously cut his grass, picked him up to give him a ride on the day of the robbery, and drove him to different locations such as the Dollar Store and bank (Doc. 7-2, Ex. 4 at 163-70). The victim referred to the man who stole his money while pointing a gun at him as the "gunman." (*Id.*, Ex. 4 at 170-72). And, contrary to Petitioner's assertion, the victim never testified that he was afraid of the "Defendant" and that the "Defendant" pointed a gun at him. Instead, it was the prosecutor who incorrectly stated to the victim, "You stated the Defendant pointed a gun at you." (*Id.*, Ex. 4 at 174). The victim did not answer "yes" to that statement but to the question that immediately followed, "Did you believe it was a real gun?" (*Id.*). Thus, Petitioner fails to show there was any reason for counsel to attempt to impeach the witness by asking him whether he believed that the "Defendant" was the man who pointed the gun at him.

Petitioner fails to show either deficient performance or prejudice. He therefore does not overcome the procedural default under *Martinez* because he fails to show that

his defaulted ineffective assistance of trial counsel claim is substantial. Petitioner cannot meet the "fundamental miscarriage of justice" exception to overcome the default because he presents no "new reliable evidence" that he is actually innocent. *Schlup*, 513 U.S. at 327. Because Petitioner satisfies neither exception to procedural default, Ground One, Sub-claim Six is procedurally barred from federal review.

GROUND TWO: Due process is being violated by Mr. Penton being illegally detained (Doc. 1 at docket pp. 9, 21)

GROUND THREE: Due process was violated by a biased sentencing judge (Doc. 1 at docket p. 10)

GROUND FOUR: Due process was violated by the amount of errors that accured (sic) during trial (Doc. 1 at docket pp. 11, 22)

In Ground Two, Petitioner contends that the State failed to prove every element of robbery. Specifically, he argues that the State failed to prove the element that he took the money from the victim because the victim testified Petitioner was not present when the robbery occurred. He also contends that he was improperly convicted and sentenced as a principal to the robbery when he was not charged as a principal to robbery. In Ground Three, Petitioner contends that he was sentenced by a judge who was biased against him and who stated that he was more culpable than the man who robbed the victim because Petitioner "breached the trust" of the victim. And in Ground Four, Petitioner contends that he was denied a fair trial because of the cumulative errors that occurred.

Respondent contends that all three claims are procedurally barred from review

because Petitioner failed to exhaust his state court remedies by failing to present these claims to the state courts (Doc. 7 at pp. 39-43). The Court agrees.

These substantive violation of due process claims should have been raised on direct appeal. But the only issues Petitioner raised on direct appeal were whether the trial court erred in denying his motion for judgment of acquittal because the State failed to prove he was a principal to the robbery and whether the trial court erred in sentencing Petitioner as both a prison releasee reoffender and a habitual felony offender (Doc. 7-2, Ex. 13). Thus, the claims in Grounds Two, Three, and Four were not exhausted in state court.

It would be futile to dismiss this case to allow Petitioner to exhaust these claims in state court because the claims could have and should have been raised on direct appeal. *See Parker v. Dugger*, 876 F.2d 1470 (11th Cir.1989) (where dismissal to allow exhaustion of unexhausted claims would be futile because of state procedural bar, claims are considered procedurally barred in federal court). Florida's state procedural rules preclude a second direct appeal, and the time limitations for bringing an appeal bar a return to state court to present the claims. *See* Fla.R.App.P. 9.110(b). Thus, Claims Two, Three, and Four warrant no relief because they are procedurally barred from review.

Petitioner asserts he can show cause and prejudice, which defeats any procedural default (Doc. 1 at docket pp. 9, 12, 14). As cause, Petitioner asserts that because of prison transfers and "covid restrictions," he was unaware of these claims

31

until "someone pointed them out" after his direct appeal (*Id.*). But this is not enough to establish cause for his default. *See Presnell v. Kemp*, 835 F.2d 1567, 1582 (11th Cir. 1988) ("The only other ground asserted by petitioner-that he was unaware of the claim-is likewise insufficient to establish cause for his procedural default."); *Rosier v. Sec'y, DOC*, 2013 WL 4055715, at *5 (M.D. Fla. Aug. 12, 2013) ("Petitioner's argument that he was unaware of this potential claim for relief in time to present it in state court does not constitute cause for the default.") (citing *Harmon v. Barton*, 894 F.2d 1268 (11th Cir.1990) (ignorance of the law fails to establish cause for a procedural default) and *Toole v. McDonough*, 379 F. App'x 883, 885 n. 5 (11th Cir.2010) (rejecting petitioner's contention that his *pro se* status and lack of legal knowledge constituted an external impediment justifying his failure to exhaust his claim)).

Petitioner fails to establish cause and prejudice or actual innocence to excuse the procedural default. Therefore, the claims are procedurally barred from habeas review. Grounds Two, Three, and Four warrant no relief.[4]

Accordingly:

1. The Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED**. The Clerk of Court is directed to enter judgment against Petitioner and close this case.

2. This Court should grant an application for a Certificate of Appealability (COA) only if Petitioner makes "a substantial showing of the denial of a constitutional

---

[4] Even if the claims were not procedurally barred, they would fail on the merits for the reasons argued by Respondent (*See* Doc. 7, pp. 39-43).

right." 28 U.S.C. § 2253(c)(2). He cannot make this showing. Accordingly, a COA is **DENIED**. And because Petitioner is not entitled to a COA, he may not proceed on appeal *in forma pauperis*.

 **DONE** and **ORDERED** in Tampa, Florida on June 16, 2025.

Charlene Edwards Honeywell
United States District Judge

Copies to: Petitioner, *pro se*
    Counsel of Record